<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARGARET GRANT,<br><br>                Plaintiff,<br><br>v.<br><br>UNITED STATES POST OFFICE, *et al.*,<br><br>                Defendants. | Civil Action No. 19-9107 (SDW) (LDW)<br><br>**OPINION**<br><br>November 1, 2021 |

**WIGENTON**, District Judge.

Before this Court is Defendants United States Post Office and Postmaster General's (collectively, "Defendants") Motion to Dismiss (D.E. 49) Plaintiff Margaret Grant's ("Plaintiff") Amended Complaint (D.E. 27) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 and venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons discussed below, Defendants' Motion to Dismiss is **GRANTED**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is an African American woman over the age of forty who was employed by the United States Postal Service ("USPS") for over 26 years. (Am. Compl. ¶¶ 1, 6.)[1] In July 2010, the agency notified employees at its West Jersey Processing & Distribution Center, where Plaintiff

---

[1] This opinion's paragraph citations to the Amended Complaint, which repeats paragraph numbers, refer to the Parties and Statement of Facts sections on pages 1–10. As the Amended Complaint is unpaginated, page citations refer to ECF page numbers.

worked, that the location would close. (*See id.* ¶¶ 7, 30.) The agency provided affected employees with bid sheets listing agency positions available elsewhere ("residual jobs") and their requirements. (*Id.* ¶ 30.) Plaintiff alleges that the manager responsible for the bid sheets, Fred Hrinuk, omitted necessary information, including test requirements. (*See id.* ¶¶ 31–34.)

Plaintiff became the senior bidder for a bulk mail position in Rahway, New Jersey, her desired position and location. (*See id.* ¶ 32.) According to Plaintiff, the bid sheet for the position stated that bidders would need to test for the job but said nothing about the consequences of failing the test. (*See id.* ¶¶ 32, 34.) Plaintiff alleges that a supervisor, Martin Israel, told her that the bulk mail job only required a typing test when it actually required three tests, including a data entry test that she was given without any preparation materials provided in advance. (*Id.* ¶¶ 36–40.) When she failed the test on March 31, 2011, Plaintiff learned that she could be terminated for failing. (*Id.* ¶¶ 40–41.) Plaintiff then wrote to the Postmaster General, several elected government officials, and the Equal Employment Opportunity Commission ("EEOC") about "what was happening to her." (*Id.* ¶ 42.)

Plaintiff alleges that around May 2011, Mr. Hrinuk and other supervisors expressed displeasure with her report to the Postmaster General, with Nancy Green asking Plaintiff to stop writing to the Postmaster, and Mr. Hrinuk calling Plaintiff to tell her to take a window position in Hillsborough, New Jersey, "or else be out on the street." (*Id.* ¶¶ 43–46.) At the time, Plaintiff alleges, there were 12 vacant jobs in Rahway, New Jersey, including her preferred position. (*Id.* ¶¶ 49, 63–64.) Plaintiff claims that Mr. Hrinuk and Deborah Smith (a labor relations manager) "did not want her in the Rahway facility because she lawfully complained to her employer," so they threatened and harassed her by sending her emails at midnight. (*Id.* ¶¶ 77–78.) Plaintiff also alleges that in August 2011, postal employee Alka Patel drafted and circulated a petition stating

2

that Plaintiff should be removed from her job because she failed the required tests for the bulk mail position. (*Id.* ¶ 79.) Plaintiff contends that only white and Indian employees signed this petition and that the petition was designed to discriminate and retaliate against her. (*See id.* ¶¶ 79–85.) According to the Amended Complaint, the Acting Postmaster eventually "addressed the issue by calling Alka Patel into his office and informing her that [her] actions . . . were unlawful and if she did not cease[,] she would be disciplined." (*Id.* ¶ 82.)

On September 26, 2011, Plaintiff received a Notice of Removal for failure to meet the testing requirements of the bulk mail position. (*See id.* ¶ 19.) Her union filed a grievance on her behalf and the grievance went through arbitration. (*See id.* ¶¶ 60, 67–72.) The arbitrator's decision issued on May 4, 2013. (*See* D.E. 49-2 (Declaration of Tanai Lee, USPS Paralegal ("Lee Decl.") at Ex. A ("Arbitrator's Award")).)[2] The Arbitrator's Award restored Plaintiff to a "residual Clerk Craft position, provided she passe[d] all tests that are required for the position by the end of June 2013." (*Id.* at 1.) The Arbitrator's Award also informed Plaintiff that "[f]ailure to qualify for the position will result in removal from the Postal Service." (*Id.*)

Separately, in November 2011, Plaintiff filed a formal complaint with the EEOC, Case No. 4B-070-0257-11, alleging, *inter alia*, that her Notice of Removal constituted discrimination on the basis of her race, color, national origin, and age and retaliation for a prior EEOC complaint. (*See* Am. Compl. ¶¶ 17–19; Lee Decl. at Ex. C ("2011 EEOC Complaint").)[3] On November 28, 2012, an administrative judge ("AJ") ruled in favor of USPS, finding that the agency had "articulated a

---

[2] With respect to the documents contained in the Lee Declaration, (D.E. 49-2), the Court may consider Plaintiff's Arbitration Award and EEOC complaints and decisions on a Rule 12(b)(6) motion because they are integral to her Amended Complaint and neither side disputes their authenticity. *See Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 772 (3d Cir. 2013); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000), *aff'd*, 276 F.3d 579 (3d Cir. 2001).

[3] Plaintiff also filed other EEOC complaints in February 2009 and May 2011 that are not at issue in this lawsuit. (*See* Am. Compl. ¶ 17.)

3

legitimate, nondiscriminatory reason" for Plaintiff's removal, namely her failure to meet the skill requirements of the position. (Lee Decl. at Ex. D (EEOC Decision, Case No. 4B-070-0257-11), at 7–8.) The AJ also found no evidence of retaliation or discrimination. (*See id.*) On December 27, 2012, the USPS issued a Notice of Final Action implementing the AJ's decision, and the EEOC affirmed the agency's final action on June 20, 2013. (Lee Decl. at Exs. E, F.)

Plaintiff retook the first required test for the bulk mail position ("Exam 425") on April 26, 2013, and failed. (*See* Am. Compl. ¶ 15.) Postmaster James McClam terminated Plaintiff that same day and USPS eventually replaced her with a younger employee. (*See id.* ¶¶ 15, 87, 91.) The USPS offered Plaintiff a bulk mail position in West Caldwell, New Jersey (in addition to the Hillsborough window position), but she declined it because the position required additional testing and would have cost her 26 years of seniority. (*See id.* ¶¶ 46, 76.)

Plaintiff alleges that, in retaliation for complaining to elected officials and the EEOC, she was denied the opportunity to bid for another position, denied the opportunity to work on standby, and inaccurately told that there was no work in the Rahway office when in fact there were 12 vacancies. (*See id.* ¶¶ 60–63.) Plaintiff claims that the retaliation and her subsequent termination violated the Memorandum of Understanding between the USPS and the American Postal Workers Union, which guaranteed that a senior bidder could return to a prior assignment if she did not qualify for a position. (*See id.* ¶¶ 54–59.)

The Amended Complaint names four younger employees who were not terminated after failing the same exam but does not allege their races or ages. (*Id.* ¶¶ 52–53.) The pleading further alleges that USPS placed Ms. Patel, age thirty-five at the time, and three others in the bulk mail position that Plaintiff sought. (*Id.* ¶ 84.) Ms. Patel was not required to take any tests but was grandfathered into the position based on her prior training. (*See id.*) Additionally, Plaintiff alleges

4

that USPS hired at least six other younger people despite telling Plaintiff that there were no more job openings. (*See id.* ¶¶ 63, 87.)

On August 7, 2013, Plaintiff filed another EEOC complaint, Case No. 4B-070-0124-13, alleging retaliation for her 2011 EEOC Complaint. (*See id.* ¶¶ 15, 17; Lee Decl. at Ex. H ("2013 EEOC Complaint").) Specifically, Plaintiff alleged that USPS unlawfully retaliated against her (i) in the manner that it provided Exam 425 on April 26, 2013; (ii) by failing to give her a tutorial before the exam; and (iii) by removing her after she failed the exam. (*See* Lee Decl. at Ex. G (EEOC Decision, Case No. 4B-070-0124-13), at 4–5.) On January 10, 2018, an AJ ruled in favor of USPS, finding that the agency's actions were motivated by "legitimate business reasons" and not Plaintiff's previous protected activity. (*Id.* at 27–28.) However, the AJ's Order Entering Judgment was not received by USPS until November 28, 2018, (Lee Decl. at Ex. I), and no Notice of Final Action appears to have issued.

Plaintiff filed the instant lawsuit on March 28, 2019, asserting ten claims against various defendants, including USPS employees. (D.E. 1.) On the defendants' motion, this Court dismissed the claims against the individual defendants with prejudice and allowed Plaintiff an opportunity to amend her complaint. (D.E. 22 at 7.) Plaintiff filed an amended complaint on March 13, 2020, asserting five counts against Defendants: (1) violations of Title VII of the Civil Rights Act by way of retaliation (Count I), disparate treatment (Count III), and a hostile work environment (Count IV); (2) violation of the Age Discrimination in Employment Act ("ADEA") (Count II); and (3) wrongful termination and breach of contract (Count V). (D.E. 27 at 10–16.) Magistrate Judge Leda D. Wettre administratively terminated this action when Plaintiff filed for bankruptcy, pending resolution of her legal representation, and restored the matter to the Court's

5

active docket on March 24, 2021.  (D.E. 39, 48.)  Defendants subsequently filed the instant motion to dismiss, and briefing was timely completed.  (D.E. 49, 50, 51.)

**II.     LEGAL STANDARD**

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips*, 515 F.3d at 231 (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (discussing the *Iqbal* standard).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.*

### III. DISCUSSION[4]

#### A. Title VII and ADEA Claims (Counts I – IV)

As this Court previously noted in its Letter Opinion dismissing Plaintiff's initial Complaint, claims based on Plaintiff's 2011 EEOC Complaint are time-barred. (*See* D.E. 22 at 6 n.9.)[5] Plaintiff contends that the instant lawsuit arises from her 2013 EEOC Complaint, but Plaintiff's 2013 EEOC Complaint alleged that USPS retaliated against her in the manner that it administered Exam 425 and terminated her. (*See* Lee Decl. at Exs. G, H.) These allegations are not the basis of Plaintiff's Amended Complaint, which tracks the factual allegations asserted in her 2011 EEOC Complaint. (*See id.* at Ex. C.) Counts I – IV must therefore be dismissed as time-barred.[6] However, out of an abundance of caution, this Court will also address the allegations contained within these counts. For the reasons discussed below, while Plaintiff includes additional factual allegations in her Amended Complaint, they remain insufficient to state a claim under Title VII or the ADEA and will be dismissed without prejudice pursuant to Rule 12(b)(6).

---

[4] As a preliminary matter, Plaintiff's opposition brief contains many factual allegations that were not included in her Amended Complaint and which the Court will disregard in deciding this motion. "Plaintiffs cannot add factual allegations in Opposition; the mechanism for curing pleading deficiencies is to file an amended complaint," which this Court will give Plaintiff one final opportunity to do. *Crozier v. Johnson & Johnson Consumer Cos., Inc.*, 901 F. Supp. 2d 494, 501 (D.N.J. 2012). If Plaintiff files a second amended complaint, her counsel should attach any necessary exhibits and identify them in a separate declaration or certification, instead of attaching numerous exhibits to her opposition brief without identification. (*See* D.E. 50 at Exs. A–R.) Any factual allegations necessary to state a claim should be included in the amended pleading; this Court will not look to inoperative pleadings to fill the gap. (*See id.* at 8–11 (citing the original Complaint throughout); *see also id.* at 8 (citing the Complaint as support for factual allegations not contained therein).)

[5] Plaintiff's 2011 EEOC Complaint received a final decision on appeal and notice of right-to-sue on June 20, 2013, initiating a 90-day clock. (*See* Lee Decl. at Ex. F, at 5–6 (notifying Plaintiff of her right to file a civil action within 90 days)); *see also* 42 U.S.C. § 2000e-5(f)(1); *Wilson v. Potter*, 159 F. App'x 415, 417 (3d Cir. 2005) ("A Title VII complaint must be filed in the District Court within 90 days of the complainant's receipt of a right-to-sue letter from the EEOC."). This 90-day limit is "strictly construed," absent some basis for equitable tolling. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). Allegations stemming from Plaintiff's 2013 EEOC Complaint are not similarly time-barred because that complaint did not result in a final agency action and right-to-sue letter from the EEOC.

[6] Plaintiff's opposition brief refers to an unsigned affidavit, purportedly from the 2013 EEOC action, that contains allegations similar to the Amended Complaint. (*See* D.E. 50 at 33 (citing D.E. 50-1 at Ex. B).) However, an unsigned affidavit of unclear origin is not entitled to consideration on a motion to dismiss.

### *Retaliation (Count I)*

To plead a *prima facie* claim of retaliation in violation of Title VII, "a plaintiff must demonstrate that: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994) (brackets and quotation omitted). Even if the plaintiff's protected activity was not the sole reason for an adverse action, the third element requires a showing that "the action would not have been taken but for his or her protected activity," and that a link exists between the action and "retaliatory animus." *Spence v. Foxx*, 159 F. Supp. 3d 483, 499 (D.N.J. 2014) (citation omitted). Allegations of reprisal for prior EEOC activity, without more, cannot establish a causal link. *See Omogbehin v. Dimensions Int'l, Inc.*, Civ. No. 08-3939, 2009 WL 2222927, at *6 (D.N.J. July 22, 2009).

Here, Plaintiff alleges that she was retaliated against after Mr. Hrinuk and other supervisors became aware that she had written to the Postmaster General, several elected government officials, and the EEOC about "what was happening to her." (*See* Am. Compl. ¶¶ 42–46.) With respect to her complaints to the Postmaster and elected officials, the Amended Complaint does not specify their content and the extent to which her supervisors were aware of that content. The nature of the content is crucial because Plaintiff may only assert a Title VII claim if the alleged retaliation took place based on "conduct protected by Title VII." *Charlton*, 25 F.3d at 201.

In contrast, Plaintiff specifies that her 2011 EEOC Complaint alleged age and race discrimination. (*See* Am. Compl. ¶¶ 17–18.) She alleges that the USPS responded to the complaint by, *inter alia*, terminating her and refusing to assign her to her preferred position. The first two elements of a retaliation claim thus appear to be met. However, Plaintiff does not allege facts sufficient to infer a causal link between her 2011 EEOC Complaint and the USPS's adverse

actions. There are no allegations specifying whether and when Postmaster McClam had knowledge of her protected conduct prior to his decision to fire her. Furthermore, even if Plaintiff's managers had knowledge of the substance of her 2011 EEOC Complaint, the Amended Complaint offers no factual allegations connecting it to her termination two years later or the agency's decision to offer her multiple positions but not the bulk mail position in Rahway.[7] Count I will therefore be dismissed.

### *Age Discrimination (Count II)*

The ADEA, 29 U.S.C. §§ 621–34, employs the *McDonnell Douglas* burden-shifting framework, under which "the plaintiff bears the burden of proof and the initial burden of production, having to demonstrate a prima facie case of [age] discrimination by showing first, that the plaintiff is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)) (other citations omitted). "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009) (citation omitted).

Here, Plaintiff alleges that she is over forty, that she was generally treated differently than younger employees with respect to alleged threats, termination, disciplinary procedure, pay, and

---

[7] To the extent that Plaintiff alleges that Mr. Hrinuk's phone calls and Ms. Patel's petition (and USPS's handling of the petition) were also acts of retaliation, the Amended Complaint does not factually and causally link these actions to Plaintiff's 2011 EEOC Complaint. Instead, it alleges that Mr. Hrinuk called her in response to her letters to the Postmaster, and it alleges that Ms. Patel's petition called for Plaintiff's removal because she failed Exam 425, and not because of any protected activity. (*See* Am. Compl. ¶¶ 43–46, 79.) The only allegations regarding retaliatory animus are purely conclusory.

terms and conditions of her employment, and that younger workers who failed the same test were not terminated. (*See* Am. Compl. at 11–12.) However, the Amended Complaint does not specify the position or work location sought and secured by these younger employees, or contain any allegations related to the younger workers' pay or other conditions of employment. Instead, according to the Amended Complaint, the Arbitrator's Award, and the AJ's decision regarding Plaintiff's 2011 EEOC Complaint, Plaintiff and other postal employees were offered other positions, and while Plaintiff turned down those job opportunities, other employees did not. (*See* Am. Compl. ¶ 76; Arbitrator's Award at 9; Lee Decl. at Ex. D, at 5–6.)

The Amended Complaint also lacks allegations to establish that these employees were similarly situated to Plaintiff. For example, it acknowledges that Ms. Patel, who received the position that Plaintiff sought, was "grandfathered" into the position based on her previous training. (Am. Compl. ¶ 84 (asserting that Ms. Patel was "illegally grandfathered" without stating a basis for that conclusion).)[8] With respect to the three other individuals who were placed in the position, (*see id.*), the Amended Complaint fails to specify their age, testing status, or qualifications. Nor does Plaintiff factually allege that she was actually qualified for the bulk mail position she sought, and in fact she admits that she did not pass the required qualifying exam. (*See id.* ¶ 15.) In sum, the Amended Complaint does not contain sufficient factual allegations for this Court to infer that Plaintiff's age, and not her inability to pass the prerequisite exam, was the but-for cause of her termination. Because the Amended Complaint fails to make a *prima facie* showing that Plaintiff was fired for her age, Count II will be dismissed.

---

[8] According to the AJ's decision regarding Plaintiff's 2011 EEOC Complaint, Ms. Patel was trained and qualified to perform the bulk mail position prior to the implementation of the prerequisite Exam 425. (*See* Lee Decl. at Ex. D, at 2 ¶¶ 8–10.) Importantly, she is only six years younger than Plaintiff, (*see id.* ¶¶ 1, 8), and this may not be "sufficiently younger to support an inference of discriminatory animus." *Smith*, 589 F.3d at 689.

### *Disparate Treatment (Count III)*

A *prima facie* claim of Title VII disparate treatment requires a plaintiff to show that "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) [] circumstances [exist] that raise an inference of discriminatory action." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citations omitted). "The central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." *Id.* at 798 (internal quotation marks and citation omitted).

Here, Plaintiff clearly belongs to a protected class on account of her race, but she has failed to proffer any facts to allege that she was qualified for the position she sought. With respect to the third and fourth elements, the Amended Complaint alleges that Defendants "discriminated against Plaintiff by treating her differently from and less preferably than similarly situated white employees" and "subjecting her to discriminatory petitions, harassment, hostile work environments, and other forms of discrimination." (Am. Compl. at 13.) However, it lacks specific allegations to support Plaintiff's claim that USPS treated her differently from other employees on the basis of her race. In particular, the pleading fails to identify a similarly situated white employee treated more favorably than Plaintiff. Although the Amended Complaint states that other employees also failed Exam 425 but were not terminated, it does not state these employees' races, or whether the positions they hold now are the positions they sought when they took Exam 425. (*See id.* ¶¶ 52–53.) Nor does the Amended Complaint state whether these other employees accepted alternative position offers within USPS, offers that Plaintiff rejected. (*See id.* ¶ 76.)

With respect to the petition against Plaintiff that was signed only by white and Indian employees, Plaintiff argues in her opposition brief that USPS "encouraged or tolerated" circulation

of the petition.  (*See* D.E. 50 at 24.)  However, this claim contradicts the factual allegations in the Amended Complaint, which acknowledge that the petition sought Plaintiff's removal because she failed the bulk mail test—not because of her race—and that the Acting Postmaster reprimanded the employee responsible for the petition and told her to stop.  (*See id.* ¶¶ 79, 82.)  Furthermore, the Amended Complaint does not contain factual allegations sufficient for this Court to infer that the petition constituted an "adverse employment action," which must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)).  For these reasons, Count III will be dismissed.

### *Hostile Work Environment (Count IV)*

To plead a hostile work environment claim, "a plaintiff must show that 1) the employee suffered intentional discrimination because of his/her [protected characteristic], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability" on the part of the employer.  *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (internal quotation marks and citation omitted) (noting that the same test is used for employment discrimination claims under Title VII and 42 U.S.C. § 1981).

Plaintiff's allegations in support of her hostile work environment claim are substantively identical to her allegations in support of her disparate treatment claim, and they are insufficient for the same reasons.  (*See* Am. Compl. at 14 (alleging that Defendants "created a hostile work environment for [] Plaintiff by subjecting her to discriminatory petitions, conditions of employment, harassment, and other forms of discrimination").)  As discussed above, there are no factual allegations supporting an inference that Defendants intentionally discriminated against

Plaintiff on the basis of her race or another protected characteristic. Nor are there factual allegations connecting her grievances, such as the petition calling for her removal or inaccuracies in the bid sheet, to a characteristic protected by Title VII, such as her race. Count IV will therefore be dismissed.

### B. Wrongful Termination and Breach of Contract Claim (Count V)

Plaintiff alleges that she was wrongfully terminated, in breach of the collective bargaining agreement that applied to her. (*See* Am. Comp. at 15–16.) To state a claim that the USPS breached a collective bargaining agreement, an employee must bring a "hybrid" claim under 39 U.S.C. § 1208(b), alleging that: (1) the employer breached the collective bargaining agreement; *and* (2) the union breached its duty of fair representation. *See Treusch v. Ctr. Square Supermarket, LLC*, 921 F. Supp. 2d 336, 344–46 (D.N.J. 2013) (applying the Labor Management Relations Act and explaining that federal statutes preempt state law contract claims arising out of breaches of collective bargaining agreements).[9] Both elements must be alleged, even when the union is not named as a defendant. *See id.* at 346 (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983)).

Here, Plaintiff fails to allege any facts that suggest her union breached its duty of fair representation. To the contrary, the Amended Complaint describes several actions that the union took on behalf of Plaintiff, including filing a grievance when Plaintiff was told she could no longer perform a residual bid, representing Plaintiff throughout the arbitration process, and notifying management about Ms. Patel's petition. (*See* Am. Compl. ¶¶ 60, 67, 81.) Plaintiff's only response in opposition is to ask this Court to ignore the applicable statutory requirements and controlling

---

[9] "Although 39 U.S.C. § 1208(b) grants federal courts jurisdiction over disputes arising under collective bargaining agreements executed by the Postal Service, § 1208(b) is the analogue to section 301(a) of the Labor Management Relations Act, and the law under § 301 is fully applicable to suits brought under § 1208(b)." *Houser v. Postmaster Gen. of U.S.*, 573 F. App'x 141, 142 n.2 (3d Cir. 2014) (citation and some punctuation omitted).

case law, and instead look to preempted state law principles, such as the implied covenant of good faith and fair dealing.  (*See* D.E. 50 at 28–30.)  However, "the Supreme Court has made it clear that 'an allegation that the union [] breached its duty of fair representation [is] a necessary component of the [] claim against the employer.'"  *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 261 (3d Cir. 1990) (quoting *Breininger v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 6*, 493 U.S. 67, 83, 110 S. Ct. 424, 434 (1989)).  This Court dismissed Plaintiff's previous breach of contract claim for the same reason when it dismissed her Complaint.  (*See* D.E. 22 at 4.)  As Plaintiff appears unable to cure this deficiency, Count V will be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**.  Counts I – IV are dismissed without prejudice and Count V is dismissed with prejudice.  Plaintiff shall have one final opportunity to amend her complaint and state a timely claim.  If she chooses to pursue this matter, Plaintiff shall file a second amended complaint within thirty (30) days.  An appropriate order follows.

_/s/ Susan D. Wigenton_
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
        Leda D. Wettre, U.S.M.J.